UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVON MUNN,

       Plaintiff,

v.                                      Case No. 1:20-cv-480
                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for supplemental security income (SSI).

On February 20, 2018, plaintiff, a child under the age of 18, protectively filed an application for SSI.  PageID.51.  His claim was denied.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and on May 24, 2019, entered a written decision with two separate determinations.  PageID.51-67.  First, the ALJ found that plaintiff was not disabled prior to attaining age 18.  PageID.63, 67.  Second, the ALJ found that plaintiff was not disabled from the date he reached age 18 through the date of the decision.  PageID.66-67.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.       LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

## II.       ALJ's DECISION

### A.       Plaintiff's claim for SSI while under age 18

#### 1.       Three step sequential evaluation process

The Social Security Act provides that, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and

2

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Administration employs a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a); PageID.52. At step one, ALJ must determine whether the claimant is engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); PageID.52. At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." *See* 20 C.F.R. § 416.924(c); PageID.52. If the claimant does not have a medically determinable severe impairment, he is not disabled. *Id*. If the claimant has a severe impairment, the analysis proceeds to the third step. *Id*.

At step three, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings. PageID.52. In making this determination, the ALJ must consider the combined effect of all medically determinable impairments, even those that are not severe. *See* 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c). PageID.52.

Step three has two parts. First, the ALJ determines whether the child's impairments meet or medically equal a listed impairment. *See* 20 C.F.R. §§ 416.925 and 416.926. Second, if the child has a severe impairment or combination of impairments that does not meet or medically equal any listing, the ALJ "will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating

with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d); PageID.53.

If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. *See* 20 C.F.R. § 416.924(d); PageID.52-53.

## 2.      ALJ's decision

When plaintiff applied for benefits on February 20, 2018, he was in the "Adolescents (age 12 to attainment of age 18)" age group. PageID.55; 20 C.F.R. §§ 416.120(c)(4) and 416.926a(g)(2)(v). He attained age 18 about five months later on July 28, 2018. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the date the application was filed. PageID.56. At step two, the ALJ found that before attaining age 18, plaintiff had the following severe impairments: adjustment disorder with anxiety; autism spectrum disorder; and unspecified attention deficit disorder (ADD). PageID.56.

At step three, the ALJ found that before attaining age 18, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appx. 1, Part A or B. PageID.56.

Then, the ALJ found that plaintiff did not have an impairment or combination of impairments that functionally equaled the listings before he attained age 18. PageID.56-64. In determining functional equivalence, the ALJ evaluated the six domains as follows. First, plaintiff had less than a marked limitation in acquiring and using information. PageID.60. Second, plaintiff

4

had less than a marked limitation in attending and completing tasks.  PageID.60.  Third, plaintiff

had less than a marked limitation in interacting and relating with others.  PageID.61.  Fourth,

plaintiff had no limitation in moving about and manipulating objects.  PageID.62.  Fifth, plaintiff

had less than a marked limitation in the ability to care for himself.  PageID.63.  Sixth, plaintiff had

less than a marked limitation in health and physical wellbeing.  PageID.64.  Because plaintiff did

not have an impairment or combination of impairments that met, medically equaled any listing or

functionally equaled the listings, the ALJ found that he was not disabled prior to attaining age 18.

PageID.56, 63.

> ### 3.      Discussion

Plaintiff raised three claims of error related to the denial of benefits before he

attained age 18.

> #### a.      The ALJ erred in concluding that the minor child, who subsequently turned 18 years of age, did not meet and/or at least equal a listed impairment in Appendix 1, Subpart P, Regulations No. 4.

Plaintiff contends that the ALJ failed to provide any analysis with respect to the

three listings reviewed at step three: Listing 112.04 (Depressive Bipolar and Related Disorders);

Listing 112.10 (Autism Spectrum Disorder); and Listing 112.11 (Neurodevelopmental Disorders).

Plaintiff contends that his diagnosed disabilities met or equaled Listing 112.10.  Plaintiff's Brief

(ECF No. 18, PageID.779) (emphasis omitted).  In this regard, plaintiff attached a 23-page exhibit

setting out citations to the administrative record which he contends establish the criteria for Listing

112.10. PageID.794-816.[1]

"The regulations provide separate tests for the three determinations at step three of

the process, whether the child's impairment meets, medically equals, or functionally equals an

---

[1] The Court notes that in the exhibit, plaintiff refers to this as Listing "212.10".  PageID.795.

impairment listed in the Listing of Impairments. 20 C.F.R. § 416.924(d)." *Farmer v. Commissioner of Social Security*, No. 1:09-cv-631, 2010 WL 3891744 at *2 (July 26, 2010), R&R adopted, 2010 WL 3906689 (W.D. Mich. Sept. 29, 2010). *See* 20 C.F.R. § 416.926a(a) ("If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings.").

At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d).

The ALJ addressed the listings as follows:

> Listings 112.04, 112.10, and 112.11 are not met because the claimant does not have extreme limitation of one, or marked limitation of two of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Nor is there a marginal adjustment or minimal capacity to adapt to changes in environment or demands not already part of daily life. Nor is the claimant's adjustment disorder "serious and persistent" as defined in listing 112.04.

PageID.56.

Here, the ALJ performed a cursory review of whether plaintiff's impairments or combination of impairments met or medically equaled one of the listings before he attained age 18.[2] The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). An ALJ "must articulate, at some minimum level, his analysis

---

[2] The Court notes that the ALJ did address the listings in detail after plaintiff became 18. PageID.64-65.

of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  Here, the ALJ did not articulate her analysis of the evidence to allow this Court to trace the path of her reasoning.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ will be directed to re-evaluate whether plaintiff's severe impairments or combination of impairments met or equaled a listed impairment before he attained age 18.

> **b.     The ALJ erred in [her] finding that the minor child does not have at least two "marked" limitations in one of the six domains of functioning, and/or one "extreme" limitation in one of the domains of functioning.**

> **c.     The ALJ erred in rejecting the opinion of plaintiff's long-term therapist and also rejecting the lay testimony of plaintiff's mother.**

Plaintiff contends that the ALJ erred in determining whether his severe impairments or combination of impairments functionally equaled a listing.  Plaintiff contends that he had at least a "marked" impairment in the areas of acquiring and using information, in attending and completing tasks, in interacting and relating with others, and in moving about and manipulating objects and that he had an "extreme" impairment in the area of caring for oneself.  Plaintiff's Brief at PageID.782.

As an initial matter, plaintiff has attached 16 pages of exhibits to the brief setting out citations to the record with respect to each of the six domains of functioning.  PageID.817-832. Plaintiff is essentially asking this Court to perform a de novo review of the evidence to reach its own conclusion with respect to the six domains.  This Court does not perform a de novo review of

the evidence, *Brainard*, 889 F.2d at 681, and even if it would resolve the dispute differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence, *Young*, 925 F.2d at 147.   Accordingly, the Court declines to perform an independent review of plaintiff's exhibit to determine whether the ALJ established functional equivalence.

The issue before the Court is whether the ALJ's determination is supported by substantial evidence.  While plaintiff asserts that the ALJ committed three errors "relative to her evaluation of equivalency," he only enumerates one error.   Plaintiff's Brief (ECF No. 18, PageID.783).  The gist of plaintiff's claim appears to be that the ALJ mischaracterized plaintiff's testimony to cast him as a highly functioning person with autism, and improperly rejected the testimony plaintiff's mother and counselor which reflected that plaintiff lacks the coordination to bounce a ball, has trouble manipulating scissors, plays with dolls, and cannot function on his own. In this regard, plaintiff contends that "[T]he ALJ appears to have based her decision squarely on her perception that Devon is a 'high functioning autistic,' given her questioning of Devon relative to TV shows that he watches, and books that he may read, and the fact that Devon stated a 'career goal' of wanting to be a screenwriter."  *Id*.; PageID.57-58.  Plaintiff contends that his stated goal of being a screenwriter is only aspirational, and that his testimony "does not actually show that [he] even understands what he would need to do to accomplish that goal, let alone to achieve it." Plaintiff's Brief at PageID.784.

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that he spends his days doing schoolwork, taking care of his pets, looking at his phone, or watching TV. He stated that he got A's and B's in school, he liked to write stories, and he does some chores at home. He stated that he takes medications for allergies and some vitamins. He testified that he likes to read books and watch TV, but does not have any interest in sports. He stated that he does not have any problems taking care of himself. He stated that in middle school he had some difficulties with kids teasing him.

8

PageID.57.   The ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms was not fully supported, finding that:

> The evidence supports that the claimant is highly functioning autistic, although there are some records that he may have Asperger's syndrome. (Exhibit 2F, 1F, 3F). However, the claimant was highly articulate during the hearing and was able to elaborate on and comprehend the complex television shows that he watches as well as the reading material that he reads. He has a goal of being a screenwriter and was able to articulate the steps that were necessary to accomplish that goal.

PageID.58.

> Plaintiff contests the ALJ's finding:
>
> It appears clear that the ALJ forgot, in writing her opinion, that Devon had been in special education through the end of 7th grade, and was home schooled after that. At the age of 18, he had not yet matriculated into the 10th grade. It would appear that the ALJ was crediting Devon, an autistic young man, with being able to complete high school, and attend a four-year university in the future, which is not a realistic goal anyone expressed in the administrative record.  Interestingly, the ALJ juxtaposed mother's testimony that Devon had "difficulty using scissors" with the ALJ's own perception that Devon "is a prolific writer and has notebooks of writing material." (PageID.62). Without referencing them, this "prolific writing" consists of Devon's "green name book," which was started between the 5th and 6th grade and contains, possibly, thousands of names that Devon has written in those notebooks over time, looking at people's name tags, seeing a name in a movie, noting them from books, etc.
>
> Without denigrating what Devon can and cannot do, one only needs to recognize the testimony given regarding Devon having Barbie dolls, which at one point numbered three hundred or so, to whom he talks and acts out scenes with them that he's possibly read in books, or seen in his TV shows. Playing with the Barbies and needing the "green name book" as a comfort item, is inconsistent with the ALJ's perception of a highly functioning, articulate young man who has a goal to be a screenwriter. (PageID.77, 96, 114, 324)

*Id*. at PageID.785-786.

> Plaintiff's final reference relates to the ALJ's determination at the fourth domain that plaintiff had no limitation in moving and manipulating objects as evidence by his prolific writing.  PageID.62.  In this regard, the ALJ stated that,

> The claimant has no physical conditions that would cause a limitation in moving about and indicated that he has no problems using pens, pencils, and scissors; although his mother testified that he has difficulty using scissors. He also is a prolific writer and has notebooks of writing material. His primary care treatment records document no physical limitations in this domain. (Exhibit 2F, testimony). The DDS psychological consultant opined that there was no limitation in this domain (Exhibit 1A).

PageID.62.

While the ALJ focused on plaintiff's ability to write names in notebooks, 20 C.F.R. § 416.926a(j)(3) sets forth examples of difficulty children could have in this domain beyond manipulating a pen or pencil, which include:

> (ii) difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) difficulty with sequencing hand or finger movements; (v) difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) poor eye-hand coordination when using a pencil or scissors.

PageID.62.

In her disability report, plaintiff's mother, Rhonda Munn, identified him as 5'10" and weighing 253 pounds.  PageID.276.  She noted that plaintiff was diagnosed as autistic at about three years of age.  PageID.277.  While plaintiff has made significant progress, "he has many cognitive issues and idiosyncrasies that prevent him from functioning in normal & public environments" and "many issues that prevent him from living by himself."  *Id.*  Plaintiff can only be left alone for short periods of time and needs constant reminding and encouragement to bathe, perform personal grooming, perform schoolwork, and pick up after himself.  *Id.*

Ms. Munn stated that "[m]y child is homeschooled because he can't function in a normal school environment."  PageID.283.  Plaintiff is an exceptional reader and has some computer skills; however, he cannot reside by himself and his mother takes care of his daily needs.

*Id*. at PageID.285.  According to Ms. Munn, "Devon isn't really interested in much else then what is in his 'inner' world and of concern to him at that moment."  *Id*.

At the administrative hearing, Ms. Munn gave a blunt assessment of plaintiff's abilities and daily activities, testifying that,

> He's not coordinated.  He can't ride a bike.  He can't bounce a ball. . . .
>
> [I]f you see him walk, he's got a gait like a monkey.  Honest to God, he's got a gait like a gorilla.  He's not coordinated. . .  [T]he big thing, though, is him talking to himself.  He does that constantly.  Whatever you – if it's a thing that's in his mind, whatever the subject is, he will talk to himself and gesture and walk and, you know, his hands are just flailing and – and – I mean, it's to a point where it's noticeable – noticeable in public.  It's very distracting to other people that are around.

PageID.106-107.

As to plaintiff's ability to care for himself, Ms. Munn testified that "I can't get him to bathe," she has to "bribe him", and that "[h]e only takes a bath when it's like do or die." PageID.104-105.  As to plaintiff's cognitive deficits, Ms. Munn testified that "[h]e doesn't understand time or money."  PageID.106.  She explained that plaintiff cannot show her "nine on the clock" and "he can't make change" when shopping.  PageID.106.

Ms. Munn provided the following testimony when questioned by plaintiff's attorney.  Ms. Munn stated that plaintiff can read very well and comprehend what he is reading. PageID.108.  The problem is focus; if she tells him to read a chapter, he may stop at two pages and walk away.  PageID.108-109.  If plaintiff wants a specific book and cannot find it, "he flips out  . . .  to the point where he can't function because he has to find that last thing."  PageID.109.

At one time, plaintiff had about 300 Barbie dolls.  PageID.110. He brushes the dolls' hair, they talk to each other, and "he plays with them like therapy dolls."  *Id*.  At the time of the hearing, his mother reduced that to less than 100 dolls.  *Id*.  Plaintiff has assigned each doll a name, sexual gender, and ethnicity.  PageID.111.

Plaintiff cannot watch an entire episode of a television program. PageID.113. After about 20 minutes, he will get up, walk around, and talk to himself. *Id*. When asked "So what do you mean he talks to himself? Does he have conversations with himself?", Ms. Munn responded "Yes. Yes. Just like we have had – had here." *Id*.

With respect to coordination, Ms. Munn stated that plaintiff cannot cut a sandwich because he does not know how to use a knife properly and cannot coordinate it. PageID.113. While plaintiff can handle scissors, he holds them oddly. PageID.114.

Ms. Munn provided about 1/3rd (28 pages) of the testimony at the administrative hearing. PageID.99-126. Nevertheless, the ALJ rejected all of her testimony, stating "[t]he claimant's mother's testimony is not persuasive, because she has a familial bias and her statements are not consistent with the medical record." PageID.59.

Plaintiff contends that the ALJ improperly evaluated his mother's testimony,

> This last statement by the ALJ is directly contradicted by the guidance given in SSR 09-1p, which teaches that Social Security will decide functional equivalence by reviewing a plaintiff's activities, which are "everything you do at home, at school, and in your community." How else is a child's home life to be considered, if a parent's testimony is deemed to be "familial bias?"

Plaintiff's Brief at PageID.788.

SSR 09-1p (Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach)[3] states in part,

> We always evaluate the "whole child" when we make a finding regarding functional equivalence, unless we can make a fully favorable determination or decision without having to do so. <u>The functional equivalence rules require us to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments.</u>

SSR 09-1p (emphasis added).

---

[3] See https://www.ssa.gov/OP_Home/rulings/ssi/02/SSR2009-01-ssi-02.html.

The first question the Commissioner considers in determining functional equivalence is:

> *How does the child function?* "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments.

In this regard, the Commissioner considers: what activities the child is able to perform; what activities the child is not able to perform; which of the child's activities are limited or restricted; where the child has difficulty with activities—at home, in childcare, at school, or in the community; whether the child has difficulty independently initiating, sustaining, or completing activities; the kind of help, and how much help the child needs to do activities, and how often the child needs it; and whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.  SSR 09-1p, citing 20 C.F.R. § 416.926(a)(b)(2).

The fourth question the Commissioner considers is:

> *To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?* We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation.

SSR 09-1p, citing 20 C.F.R. § 416.924a.

Plaintiff's mother is intimately acquainted with every aspect of plaintiff's life, being his caregiver and teacher.  Under the framework of the regulations, the "whole child" approach set forth in SSR 09-1p, and the record in this case, plaintiff's mother is the best, and possibly only, source of information regarding plaintiff's ability to function.  In the Court's opinion, the ALJ could not summarily disregard her testimony on the basis of "familial bias."

13

In reaching this determination, the Court has also reviewed records of plaintiff's counselor, Meredith Sheldon, M.A.  Those records corroborate aspects of the mother's testimony. For example, Ms. Sheldon noted that while plaintiff enjoyed tossing a ball back and forth, he had "very poor hand and eye coordination." PageID.710 (Sept. 10, 2018).  With respect to computer skills, Ms. Sheldon noted that plaintiff was impulsive, "spends most of his time online," and that he self-reported looking at pornography two hours a day.  PageID.702 (July 19, 2018).  With respect to interests, plaintiff shared that he collects names and "has millions of names." PageID.696 (May 14, 2018).

Ms. Sheldon wrote a letter on September 24, 2018, after plaintiff attained the age of 18, stating that after assessing him and reviewing records, plaintiff has developmental delays in math that place him at about the 4th grade level and is able to read and write at about an 8th grade level.  Sheldon Letter (Exh. 6F) (PageID.692).  Ms. Sheldon recommended that plaintiff be placed on financial assistance while he gets life skills and job skills, which "would enable him to have a job where he would be able to financially be able to support himself."  *Id*.  She believed "that Devon is coachable and would be able to accomplish such training, but at this time needs to be in the care support [sic] of his mother until such training has occurred." *Id*.

The ALJ did not find Ms. Sheldon's letter persuasive "because it is not consistent with the evidence that the claimant is high functioning and is able to articulate, comprehend, and concentrated on above grade level reading material and television shows as well as have an employment goal which he can articulate the steps to obtain."  PageID.59.

Based on this record, the Court concludes that the ALJ has failed to articulate her reasons for summarily rejecting the testimony of plaintiff's mother, Ms. Munn.  As the one person who is intimately acquainted with plaintiff, being both his caregiver and teacher, Ms. Munn's

testimony is essential to accomplish the "whole child" approach to determining functional equivalence.  Accordingly, this matter will be reversed and remanded on that basis as well.  On remand, the Commissioner will be directed to re-evaluate the testimony of Ms. Munn with respect to whether plaintiff's limitations functionally equaled the listings before he attained age 18.

**B.      Adult disability claim**

**1.      Five step sequential process**

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## 2.    ALJ's decision

Plaintiff's adult disability claim failed at the fifth step of the evaluation.    At the first step, it appears that the ALJ adopted her determination that plaintiff has not engaged in substantial gainful activity since the date the application was filed.  *See* PageID.56.  At the second step, the ALJ found that plaintiff has not developed any new impairment or impairments since attaining age 18, and that he has continued to have a severe impairment or combination of impairments.  PageID.63-64.  At the third step, the ALJ found that since attaining age 18, plaintiff has not had an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.64

The ALJ decided at the fourth step that:

After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional interaction with coworkers and supervisors,

16

occasional interaction with the public but not in a customer service setting. He is further limited to simple, routine tasks on a continuous basis, simple work-related decisions, and no assembly line pace work.

PageID.65.  The ALJ also found that plaintiff has no past relevant work.  PageID.65.

At the fifth step, the ALJ determined that since attaining age 18, considering plaintiff's age, education, work experience, and residual functional capacity (RFC), jobs have existed in significant numbers in the national economy that he has been able to perform. PageID.66.  Specifically, the ALJ found that since attaining age 18, plaintiff could perform the requirements of unskilled work at all exertional levels in the national economy, such as industrial cleaner (300,000 jobs), laundry aid (200,000 jobs), and "Cleaner II" (214,000 jobs).  PageID.66. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 28, 2018 (the date he attained age 18) through May 24, 2019 (the date of the decision).  PageID.66-67.

### 3.    Discussion

Plaintiff raised two claims of error related to his adult disability determination.

**a.    The ALJ erred in his assessment of plaintiff's RFC, when he turned 18 years of age.**

**b.    The ALJ erred in concluding that plaintiff, as an adult, could perform substantial gainful activity.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. §416.945.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ determines the RFC "based

17

on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §416.920(e).

The gist of plaintiff's claim is that the ALJ's RFC determination did not take into account the notations in the record regarding plaintiff's lack of eye and hand coordination and his "quirky behavior" described by Ms. Munn.  Plaintiff's Brief at PageID.789-790.  As discussed, *supra*, the ALJ did not properly evaluate Ms. Munn's testimony.  On remand, the Commissioner will be directed to re-evaluate the Ms. Munn's testimony with respect to his RFC as an adult.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to (1) re-evaluate whether plaintiff's severe impairments or combination of impairments met or equaled a listed impairment before he attained age 18, (2) re-evaluate the testimony of plaintiff's mother, Ms. Rhonda Munn, with respect to whether plaintiff's limitations functionally equaled the listings before he attained age 18, and (3) re-evaluate Ms. Munn's testimony with respect to his RFC as an adult.  A judgment consistent with this opinion will be issued forthwith.

Dated:  September 29, 2021                         /s/ Ray Kent
                                                                    United States Magistrate Judge